UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                               :

FELIX HERNANDEZ,

                *Petitioner*,

   *-against-*

ANTHONY J. ANNUCCI, Acting
Commissioner, DOCCS,

                *Respondent*.

------------------------------------------------------------X

14 Civ. 8437 (PAC) (JCF)

**OPINION & ORDER
ADOPTING REPORT &
RECOMMENDATION**

HONORABLE PAUL A. CROTTY, United States District Judge:

Petitioner Felix Hernandez faces removal from the United States as a consequence of

having pleaded guilty to first degree sexual abuse, in violation of New York Penal Law

§ 130.65(2). He petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on grounds

that his plea counsel rendered ineffective assistance by failing to advise him that the plea would

result in mandatory removal. The state court refused to vacate the plea, holding that Petitioner

failed to demonstrate a reasonable probability that he would not have pleaded guilty had he been

properly advised of the immigration consequences. In a Report and Recommendation ("R&R")

issued on May 8, 2015, Magistrate Judge James C. Francis recommended denying the petition

because the state court's findings were not objectively unreasonable, the necessary showing to

warrant habeas relief under § 2254. The Court agrees and adopts the R&R in full. The petition

for a writ of habeas corpus is DENIED.

## BACKGROUND

Petitioner was born in the Dominican Republic and moved to New York in the early

1

1990s. State Record ("R.") at 363-64. He has six children, two from a previous marriage and four with his current wife Virginia. R. at 364-65. Petitioner obtained temporary residence status in 1994 and permanent residence status in 1997. R. 364-65.

On December 19, 2006, Virginia's sister reported to the police that on the prior day, while she was sleeping on a couch in Petitioner's apartment, Petitioner tried to rape her by rubbing her vagina over her pants, grabbing her breast, trying to kiss her, and telling her he wanted to make love to her. R. 542. The sister awoke and yelled for help to Virginia, who was sleeping in another room. R. 543. In February 2007, two officers questioned Petitioner about the incident. R. 545. After waiving his *Miranda* rights, Petitioner told the officers that he had been upset with Virginia's sister for bringing a man to his home and leaving the man alone with his wife while Petitioner was on a trip to Puerto Rico. R. 274. Petitioner told the officers that he had shaken Virginia's sister to wake her and may have tried to hold her. R. 274.

In March 2007, a grand jury indicted Petitioner for attempted rape in the first degree, two counts of sexual abuse in the first degree, and attempted sexual abuse in the first degree. R. 30-32. The attempted rape charge carried a minimum prison term of seven years and a maximum term of fifteen years.

Petitioner moved to suppress his February 2007 statements and Justice Edward McLaughlin of the New York Criminal Court held a suppression hearing on November 7, 2007. Detective John Savino described the *Miranda* waiver and Petitioner's statements, and the court recessed for lunch prior to cross-examination. R. 264-67. When the hearing resumed, Petitioner's attorney informed the court that Petitioner intended to plead guilty to sexual abuse in the first degree. R. 278. During the plea allocution, the court stated: "I am a mere New York State official. I have no idea what any federal immigration situation would be as a result, if any,

2

of this conviction, but I am suppose[d] to tell you that as well." R. 284. The court sentenced Petitioner on November 29, 2007, per the terms of the plea agreement, to five years of imprisonment and five years of post-release supervision. R. 288-91. In July 2008, Petitioner appeared *pro se* before a United States Immigration Judge, who determined that since Petitioner had pleaded guilty to a crime of violence, he was subject to automatic removal to the Dominican Republic. R. 300-15.

In February 2011, Petitioner initiated a Section 440 proceeding to vacate the judgment. R. 292. On June 23, 2011, Justice McLaughlin held a hearing on whether Petitioner had received ineffective assistance of counsel at his plea. Petitioner's plea counsel testified that he did not remember advising Petitioner on the immigration consequences of his plea and that at the time it was not his practice to discuss immigration consequences with a client "[u]nless the issue arose at some point during the proceedings." R. 358-61. Petitioner testified that he had a prior guilty plea to assault in the second degree in connection with a fight in 2001 with Virginia's brother, but stated that he had been acting in self-defense. R. 377-87. Petitioner testified that during the incident with Virginia's sister, he had been angry with her and had grabbed her "between her pants and her blouse" in order to physically remove her out of the apartment. R. 371-72. He denied touching her for sexual gratification and denied touching her vagina and breasts. R. 372, 381. Petitioner further testified that, when he pleaded guilty, he did not understand what a trial was, the significance of testifying under oath, and that he mistakenly thought that any physical contact with a person of the opposite sex without consent was "sexual contact." R. 385-90.

Finally, Petitioner testified that he accepted the plea deal and the five year sentence to avoid his exposure to the fifteen year maximum. He stated that he "never spoke" to his attorney about deportation and assumed that there were no immigration consequences because he was a

permanent resident. R. 372-73. Petitioner testified that, had he known that his guilty plea would
lead to deportation, he would "never" have pleaded guilty, "because [he] was going to be left
without [his] children." R. 373. Petitioner's son testified that Petitioner was an involved and
caring parent. R. 398-400.

Justice McLaughlin issued on oral decision on July 7, 2011 and a brief written decision
on July 12, 2011. In the oral decision, the court found that plea counsel "did speak to
[Petitioner] about immigration . . . but that the statement did not have the clarity and the certitude
that was available to [counsel] to locate and to communicate." R. 435. The court credited
Petitioner's statement that "he did not get the appropriate legal warning with regard to
immigration consequences" and that the court's general warning at the time "was inadequate to
solve a problem created by a vague or general announcement by a lawyer." R. 435.

But the court rejected as incredible Petitioner's testimony that had he been properly
warned, he would not have pleaded guilty. The court cited "various factual disagreements which
[it] found inherently incredible and incredible as delivered," including Petitioner's statement that
he did not know the meaning of the words "sexual contact," which the court found to be
"positively Clintonesque," and Petitioner's claim that he did not know the meaning of a trial or
an oath, which the court characterized as "poppycock" and "balderdash." R. 437-40. The court
also relied on "the context in which his plea occurred, and what likely is the rationale for the
plea." R. 437. The court reasoned that Petitioner had hoped that Virginia's sister would not
testify against him, but he realized that she would testify when he received the prosecution's
witness list before the hearing. R. 438. The court stated that Petitioner decided to accept the
plea during the lunch break because "factual guilt was, from the defendant's standpoint,
seemingly, if not overwhelming, then compelling." R. 438. Finally, the court rejected

Petitioner's claim of "family fealty," stating that the decision to plead guilty was "the trumping of self-interest over the feigned or real familial interaction" because Petitioner "knew it was in his best interests to take the five years" and "suffer the deportation." R. 439. The court concluded that Petitioner "chose to accept the five years and then the deportation rather than the anticipated longer sentence and then deportations, and that nothing the lawyer said or didn't say would have changed that decision." R. 441-42.

The court's subsequent written opinion reaffirmed its holding that while Petitioner had demonstrated that counsel had been deficient, he "failed to establish a reasonable probability that adequate immigration advice would have altered his decision to plead guilty." R. 443. The ruling was upheld by the Appellate Division and New York Court of Appeals over dissents in both courts. *People v. Hernandez*, 98 A.D.3d 449 (App. Div. 2012), *affirmed* 22 N.Y.3d 972 (2013). Specifically, the Court of Appeals held that, "upon reviewing the record, we conclude that there is support for the lower courts' determination that defendant failed to show a reasonable probability that, if counsel had informed him that he was certain to be deported as a result of his guilty plea, he would not have pleaded guilty and would have gone to trial." 22 N.Y.3d at 976.

**DISCUSSION**

## I.    Legal Standards

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the Court applies a "highly deferential standard to the state court determination where, as here, the claim has been adjudicated on the merits by the state court." *Lopez v. Ercole*, 588 Fed. Appx. 39, 40 (2d Cir. 2014) (summary order). A habeas petition may not be granted unless the state court's determination "(1) resulted in a decision that was contrary to, or involved

5

an unreasonable application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State court proceeding." 28
U.S.C. § 2254(d). Put another way, "[a]s a condition for obtaining habeas corpus from a federal
court, [petitioner] must show that the state court's ruling on the claim being presented in federal
court was so lacking in justification that there was an error well understood and comprehended in
existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562
U.S. 86, 103 (2011). "[A] determination of a factual issue made by a State court shall be
presumed to be correct." 28 U.S.C. § 2254(e)(1). "This presumption of correctness is
particularly important when reviewing the [state court's] assessment of witness credibility."
*Parsad v. Greiner*, 337 F.3d 175, 181. A petitioner challenging a factual determination must
show not just that the determination was incorrect; he must also show that it was "objectively
unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).

A claim for ineffective assistance of counsel is evaluated pursuant to *Strickland v.
Washington*, 446 U.S. 668 (1984). To establish ineffective assistance, petitioner must (i) show
that his counsel's representation "fell below an objective standard of reasonableness" measured
by "prevailing professional norms," and (ii) "affirmatively prove prejudice" by showing that
"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." *Id.* at 688-94.

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Supreme Court held that an attorney
representing a criminal defendant in plea negotiations has an affirmative duty to advise his client
of the immigration consequences of a conviction, and failure to do so deprives the defendant of
effective assistance of counsel. *Id.* at 367-71. To establish prejudice in this context, "a petitioner

6

must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* at 372. "The inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to enter a plea." *Francis v. United States*, No. 12 cv 1362 (AJN) 2013 WL 673868, at *3 (S.D.N.Y. Feb. 25, 2013). A petitioner must demonstrate not just a reasonable probability that, but for counsel's error, he would have rejected the plea and gone to trial; he must also demonstrate a reasonable probability that going to trial could have resulted in a different outcome. *Id.* at *6.

The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If no objections are made, the Court reviews the R&R for clear error. *Terio v. Michaud*, No. 10 cv 4276 (CS), 2011 WL 2610627, at *1 (S.D.N.Y. June 27, 2011). If a party objects, the Court conducts a *de novo* review of the R&R's contested portions. *See Idlisan v. Mount Sinai Medical Center*, No. 12 Civ. 8935 (PAC) (RLE), 2015 WL 136012, at * 2 (S.D.N.Y. Jan. 9, 2015). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) (internal quotation marks omitted).

**II.    Analysis**

Petitioner argued before the Magistrate Judge and again in objection to the R&R that the state court's determination that Petitioner failed to establish prejudice was objectively unreasonable because the state court based its decision on speculation, unsupported by the record, as to why Petitioner decided to accept the plea. *See* Pet. Objections to R&R, Dkt. 25 at 5. Petitioner also questions the state court's credibility assessment, arguing that the court should

7

credited his claims that he took the plea to minimize the time spent away from his children and that he did not understand the legal definition of "sexual contact," the significance of testifying under oath, or the nature of a trial. *Id.* at 15-22.

The R&R recommends denying the petition because the state court's determination that Petitioner failed to establish prejudice—premised on its finding that Petitioner was an incredible witness—was not objectively unreasonable. The Court agrees. As Petitioner acknowledges, his ability to succeed at trial largely amounted to a "credibility contest" against the victim. Pet. Objections at 8. For this reason, the state court's finding that Petitioner was an incredible witness directly implicated the question of whether Petitioner was prejudiced by accepting the plea. The state court's credibility determination is presumed to be correct, and Petitioner has failed to demonstrate that it was objectively unreasonable. *Parsad*, 337 F.3d at 181. It was not unreasonable for the state court to find incredible Petitioner's claims that he did not know the meaning of "sexual contact," that he did not understand the implications of testifying under oath, or to question Petitioner's family fealty given past incidents of violence against family members. Likewise, it was not unreasonable for the state court to find that Petitioner would have accepted the plea even if he had been adequately informed of the immigration consequences because he faced a significant sentence, had recently received the prosecution's witness list, and had heard the testimony of the investigating officer. Petitioner offers a variety of reasons why the state court might have credited his testimony. But those reasons are inadequate to render the state court's determination objectively unreasonable, and so fail to provide adequate grounds for habeas relief. The petition for a writ of habeas corpus is denied.

Petitioner also seeks a certificate of appealability to the Second Circuit. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of

8

appeals from . . . the final order in a habeas corpus proceeding." 28 U.S.C. § 2253 (c)(1)(A). To receive a certificate of appealability, a petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). Petitioner argues that the fact that several judges dissented in the state appellate courts demonstrate that "reasonable jurists could debate" the merits of his claim. *See* Pet. Objections at 25-26. But the standard to obtain habeas relief is higher than that applied by the state courts. Even assuming that the *Strickland* issue was debatable when considered by the state courts in the first instance, on habeas review the determinations of the state courts—and particularly determinations of credibility—are presumed to be correct and can be overturned only if objectively unreasonable. Petitioner has not provided any grounds to conclude the state courts' determinations were objectively unreasonable. The petition for a certificate of appealability is denied.

## CONCLUSION

The petition for a writ of habeas corpus or a certificate of appealability is DENIED. The Clerk is directed to enter judgment and terminate 14 cv 8437.

Dated: New York, New York
December 10, 2015

SO ORDERED

Paul Scotty

PAUL A. CROTTY
United States District Judge

9